ZIAS D. DAVIS, TRUSTEE, ETC., v. MOSES MARX, ET AL.

1. CHATTEL MORTGAGE. *Property to be acquired.*
   A mortgage of a certain described horse, and all other live stock of which the mortgagor may become owner during the year, gives a valid lien upon any horse or other animal which the mortgagor may acquire during the given year, by one or more exchanges of the first-mortgaged horse and his successors.

2. SAME. *After-acquired property. Case in judgment.*
   J. gave a deed in trust on an iron-gray horse, and all other live stock of which he might become owner during that year, to secure a debt of $384 which he owed Martin. J. then exchanged the iron-gray for a bay horse, and subsequently traded the latter to Marx for a roan horse, giving his note for $118, as the difference in the value of the horses, and securing the same to Marx by a deed in trust on the roan. These trades were within the year covered by Martin's deed in trust, of which Marx had actual notice. Martin filed a bill to subject the roan horse to the payment of his debt. *Held,* that the roan horse should be sold, and out of the proceeds of the sale Martin should receive the value of the bay horse, and the balance, if any, should be paid to Marx.

APPEAL from the Chancery Court of Copiah County.

Hon. E. G. PEYTON, Chancellor.

The case is stated in the opinion of the court.

*H. B. Mayes,* for the appellant.

Marx had actual and constructive notice that Martin held a deed in trust on all the live stock which Jackson might own during the year in which the roan horse was traded for the bay. Martin's deed in trust was good as to personal property and stock which Jackson acquired during that year. *Sellers* v. *Lester,* 48 Miss. 513.

*Harris & Miller,* for Marx, one of the appellees.

SIMRALL, C. J., delivered the opinion of the court.

Samuel Jackson, being indebted to B. F. Martin $384, payable October 1, 1876, conveyed in trust, as security for the indebtedness, " one iron-gray mule, one bay mule, four cows and calves, two yoke of oxen, and all other live stock and personal property that he may own during the year," etc., and also one iron-gray horse.   Soon after the deed was recorded, which was February 4, 1876, Jackson exchanged the gray horse for a bay horse, on the agreement with Martin that the bay was to be considered as substituted in the deed for the gray.   Still later in March of the same year Jackson exchanged the bay horse to Marx for a strawberry-roan horse.

The complainant seeks to hold the strawberry-roan subject to the trusts of the deed, because Marx took from Jackson in its place the bay.   Marx contends that in the bargain by which he acquired the bay, and parted with the roan, Jackson became indebted to him $118, to secure which he took a deed in trust on the roan ; and that he has a paramount security to Martin.

The latter claims that he has a prior lien, because his security embraced, not only the stock enumerated, but also " all other live stock Jackson may own during the year."   It might be conceded that, as to Jackson, the deed in trust would have that effect in favor of Martin.   But contemporaneously with the acquisition of the horse, and, as we understand the case, as part of his price, Jackson gave to Martin his note for $118. If there were no other element affecting the equities of the parties than a sale of the horse to Jackson on a credit, and a pledge of the horse by mortgage as a security, Marx's right would be superior to Martin's.  Perkins et al. v. Swank, 43 Miss. 349.   For in that case, by the very act of becoming owner, the title is fettered by an incumbrance, and when the animal became the property of Jackson, his right was subordinate to the mortgage.

It may be legitimate, within proper limitations, to mortgage

property not *in esse* at the time, or not in the ownership of the debtor. The principle has had application to cases of the renewal of machinery and rolling-stock of a railroad company, in place of that which had been worn out; to work stock on a farm, to increase the means of cultivation, or replace animals that have died. *Everman & Co.* v. *Robb*, 52 Miss. 660; *Sellers* v. *Lester*, 48 Miss. 523; *Cayce* v. *Storall*, 50 Miss. 400; *Butt* v. *Ellis*, 19 Wall. 544. The principle would apply to the bay horse obtained by Jackson for the gray horse given in exchange. It would also apply to the strawberry-roan horse, if that animal had been a mere exchange for the bay. But, as we understand the record, the bay horse and Jackson's note for $118 were given by him to Marx for the roan horse. We cannot doubt from the testimony that Marx, before his trade with Jackson, had express notice of the trust deed for Martin's security, and of the extent of its provisions in reference to the property included. Martin states that, in response to Marx's inquiry, he gave him full information on the subject, and cautioned him in reference to a sale of a horse to Jackson, then in treaty. It may be assumed that Marx had notice that the bay horse was incumbered at the time he traded for him. He purchased subject to Martin's claim. He cannot escape responsibility by putting the property beyond Martin's reach, nor will he be heard in a court of equity to aver that he delivered the roan horse to Jackson subject to a lien for $118, and claim priority to that amount over Martin. Martin had a superior claim on the bay horse, which in part, and to its value, is represented by the roan; and may pursue that equity to the property into which the bay was converted, and subject it, to the extent of the value of the bay, to his debt.

If Marx had converted the bay into money, he would be liable for that. Instead of that transaction, he swapped the roan for the bay, and got Jackson's note for the difference in value. Martin will be righted by ascertaining the value of the bay, and charging that on the roan, and if on the sale the roan produces

more than the value of the bay, such excess to be paid to Marx. That redress is within the principle ruled in *Butt* v. *Ellis*, *ubi supra*.

Decree reversed and cause remanded, with directions to ascertain the value of the bay horse received by Marx from Jackson; and to order the sale of the strawberry-roan horse, and out of the proceeds to deduct the value of the bay horse and pay them over to the complainant.