## UNION & PLANTERS BANK & TRUST COMPANY v. LINDEN STREET CHRISTIAN CHURCH.

Western Section. April 23, 1926.

Certiorari denied by Supreme Court, December 11, 1926.

1. **Assignments. An assignment may be made of money to become due.**
   A valid assignment may be made of money to become due in the future or on the performance of an existing contract.

2. **Assignments. A building contractor may assign the balance due him.**
In an action to recover money on an assignment made by a building contractor, held that a building contractor has the common-law right to assign the balance due and to become due from the owner.

3. **Assignments. Assignee becomes owner of a chose in action upon assignment.**
The general rule is that the unqualified assignment of a chose in action vests in the assignee the title thereto to the same extent as the assignor had it at the date of the assignment, and no more.

4. **Assignments. Debtor held liable for paying out assigned funds after assignment.**
In an action by a bank to recover from a church money assigned to it by a contractor where the contract provided that the church should satisfy liens against the property before paying the contractor and the church paid material bills which were not liens against the property after having accepted an assignment of the funds, held, that the church improperly paid the bills and was liable for the amount of the assignment.

Appeal from Part I, Chancery Court, Shelby County; Hon. F. H. Heiskell, Chancellor.

Affirmed.

A. B. Knipmeyer, of Memphis, for appellant.

F. M. Gilliland, of Memphis, for appellee.

FAW, P. J.   There are but two parties to this suit. The complainant Union & Planters Bank & Trust Company is a Tennessee banking corporation, and the defendant Linden Street Christian Church is a general welfare corporation organized under the laws of the State of Tennessee. Each of said corporations has its situs at Memphis, Tennessee.

The complainant Bank filed the bill in this case on May 16, 1923, seeking a judgment against the Church for $5000, with interest from April 1, 1922. The Bank claimed the right to a recovery of the amount above stated by virtue of an alleged assignment, in the form of an order on the Church, drawn by A. A. Munsell against a fund thereafter payable to Munsell upon his performance of a certain contract to remodel and enlarge a building for the defendant Church, and which order was accepted on behalf of the Church by J. H. Wright, the Chairman of its Building Committee.

The defense interposed by the Church was, in substance, that the order was drawn on a particular fund, viz: the sum which would be due Munsell on final settlement under the terms of the aforesaid building contract between Munsell and the Church, and that the balance due Munsell on such final settlement was only $923.99, which latter sum the Church had tendered to complainant Bank as a full settlement and satisfaction of its liability to the Bank on said order or assignment, but which the Bank had declined to accept.

A final decree in the cause was entered in the chancery court on November 21, 1924, as follows:

"This cause came on this day to be heard upon the original bill of the complainant and the answer thereto of the defendant, and upon the stipulation between the complainant and defendant as to certain facts, and upon the depositions of witnesses, and upon the whole record in the cause, from all of which it satisfactorily appeared to the court that the said A. A. Munsell Company by A. A. Munsell, sole owner, assigned to complainant the sum of five thousand dollars ($5000) payable out of the fifteen per cent that was withheld by the defendant under the terms of the contract between defendant and Munsell for the alterations and additions to the defendant's Church building located at the corner of Linden avenue and Mulberry Street in Memphis, Tennessee, payable at the time and in the manner and under the conditions provided for by said building contract, and that defendant accepted notice of said assignment in writing by its duly authorized agent, and that, therefore, the defendant was obligated to pay to complainant the said sum of five thousand dollars ($5000) and that the said sum of money assigned to complainant was due and should have been paid by defendant to complainant.

"It is therefore ordered, adjudged and decreed that complainant have and recover of the defendant the sum of five thousand dollars, with interest from May 16, 1923, and all the costs of this cause, for which execution will issue against defendant.

"Defendant Linden Street Christian Church excepts to the foregoing decree and every part thereof; and from said decree prays an appeal to the next term of the Supreme Court of Tennessee, at which appeals from the chancery court of Shelby county will be heard, which appeal is granted upon said defendant giving a sufficient appeal bond in the sum of $7500 to be approved by the clerk & master, and thirty days are allowed defendant in which to file said bond."

The Church perfected its appeal to the Supreme Court, and the case was thereafter transferred to this court pursuant to the provisions of the Act of 1925, ch. 100, and appellant has assigned errors here, through which assignments of error it is asserted that the decree of the chancery court is erroneous so far as it awards to complainant Bank anything more than the sum of $923.99.

The assignment, or accepted order, on which the Bank predicates its right to a recovery in this case is in words and figures as follows:

"Memphis, Tennessee.
"December 19, 1921.

"Linden Street Christian Church.
"J. H. Wright, Chairman of Building Committee.
"Memphis, Tennessee.

"Please pay to the order of Union & Planters Bank & Trust Co., of Memphis, Tennessee, the sum of five thousand ($5000) dollars

payable out of the 15% that is withheld by you under the terms of our contract for the alterations and additions to your church building located at the corner of Linden and Mulberry Street in Memphis, Tennessee, payable at the time and in the manner and under the conditions provided for by our said contract.

"A. A. Munsell Co.
"By A. A. Munsell,
"sole owner."

Accepted.
"J. H. Wright, Chairman
"Bldg. Committee.

The contract mentioned in the above quoted order or assignment was a written contract of date May 12, 1921, by which A. A. Munsell agreed and bound himself to make certain "alterations and additions" to the church building owned and occupied by the defendant at the corner of Linden street and Mulberry street in the city of Memphis, Tennessee, and to provide all of the materials and perform all the work and do everything required by the "General Conditions of the Contract, the Specifications and the Drawings."

The provisions of the contract with respect to the sum to be paid by the church (described as "owner") to A. A. Munsell (described as "Contractor"), and the time when and conditions upon which the several installments thereof should be paid, are contained in Article 3 of the written contract, which Article is in these words:

"The Owner agrees to pay the Contractor in current funds for the performance of the Contract seventy-eight thousand, two hundred and eighty-seven and no/100 dollars ($78,287), subject to additions and deductions as provided in the General Conditions of the Contract, and to make payments on account thereof as provided therein, as follows: On or about the first day of each month eighty-five per cent of the value, proportionate to the amount of the contract, of labor and materials incorporated in the work up to the first day of that month as estimated by the architect, less the aggregate of previous payments. On substantial completion of the entire work, a sum sufficient to increase the total payments to eighty-five per cent of the contract price, and sixty days thereafter, provided the work be fully completed and the Contract fully performed, the balance due under the Contract."

The specifications, which by the terms of the contract were made a part thereof, contain (among many others not material to the present controversy) the following, viz:
"LIEN LAW.

"It shall be the duty of the Contractor to observe all provisions set forth in the Lien Laws of the State of Tennessee. It shall be his duty to promptly furnish all papers required in accordance with

the provisions of this law whenever deemed necessary for the protection of the interests of said Owners.

"Before receiving any payment except the first one, the contractor shall make statement by affidavit, showing that all moneys previously received have been used to pay for labor and materials on this building. All payments to be made on certificates from the architect.

"If required, the Contractor shall give the architect a complete list of all sub-contractors, stating the amounts at which all sub-contracts are let. If required at any time, the Contractor shall furnish the architect a sworn statement of all outstanding obligations for labor and materials used on this job.

"Receipted bills for all materials and labor shall be furnished if required by the architect or Owners, before final settlement is made."

It is also stipulated in the contract that the Contractor shall give an acceptable bond to the Church in a sum equal to the amount of the contract, and the Contractor executed a bond accordingly, which was signed by an approved Surety Company and accepted by the Church. Said bond contains, among others, the following conditions, viz:

"The Owner without the written consent of the Surety signed by Officers of the Surety at its home office in Baltimore, Maryland, shall not assign this bond or any interest therein, and the Surety shall not be liable directly or indirectly to any one except the Owner, but in estimating the amount of liability, claims of mechanics and materialmen arising out of the performance of the contract and paid by the Owner may be included only when the same by the statutes of the State where the contract is to be performed are valid liens against the Owner's Property."

Munsell entered upon the work called for by the aforesaid contract, and shortly before the 19th day of December, 1921, he applied to complainant Bank for a loan of $5000, and represented to Mr. J. D. McDowell, who acted for the Bank in the transaction, that he (Munsell) would make a nice profit out of his contract with the Linden Street Christian Church, and that he could and would pay the loan (if made to him) out of the 15% of the contract price to be retained by the Church until final settlement. Mr. McDowell (for the Bank) declined to make the loan to Munsell without security and, at Munsell's request, Mr. J. H. Wright, Chairman of the Building Committee of the Church, went to see Mr. McDowell and stated to him, in substance, that the work which Munsell had contracted to do for the Church was approaching completion; that up to that time Munsell had performed his contract in a satisfactory manner; that the work would probably be finished in thirty days, and that upon the completion of the contract the Church would

have in its hands approximately $12,000 earned by Munsell and payable to him after the expiration of sixty days from the completion of his contract. Mr. McDowell testifies that Mr. Wright also stated to him at that time that there were no unpaid bills for labor or materials used on said job, except one claim of about $200 which was in dispute between Munsell and the sub-contractor. Mr. Wright testifies that he qualified the statement just made to Wright as above set forth by the phrase "so far as I know." In the view we take of the case, it is immaterial whether or not Wright used the qualifying phrase just quoted. Both McDowell and Wright appear to be men of high character, and the record discloses no good reason to attribute the single difference in their testimony to anything other than the difference in recollection of the words spoken in a conversation which took place more than two years before the witnesses testified.

After the above-mentioned interview between Wright and McDowell, the Bank, acting through McDowell, made a loan of $5000 to Munsell and took his note for that amount, dated December 19, 1921, and payable ninety days after its date, with the aforesaid assignment, or accepted order, as security therefor.

Munsell completed his contract with defendant on February 1, 1922. At a meeting of the Official Board of defendant Linden Street Christian Church on February 12, 1922, "upon a motion by Bro. J. H. Wright, seconded by Bro. B. M. Brown, the new buildings and improvements were officially accepted by the Board," and on February 14, 1922, a written notice was delivered to Munsell as follows:

"Feb. 14th, 1922.

"Mr. A. A. Munsell, Contractor,

"McCall Building,

"Memphis, Tenn.

"Dear Sir:

"This is to notify you that a Special Meeting of the Official Board of the Linden Street Christian Church, motion carried accepting the building and improvements constructed by you, according to terms of contract, same completed February 1, 1922, and I take pleasure in conveying this information officially to you.

"Very respectfully,

"Carl C. Moore

"(Signed) Carl C. Moore

"Clerk of Official Board and

"Secretary LINDEN STREET CHRISTIAN

"CHURCH, INC."

Notwithstanding the action of defendant's Official Board and its clerk as above stated, it was contended by defendant, in its answer and proof below, that Munsell's contract was not completed until several weeks after February 1st. But we think the clear weight of

the proof shows that Munsell's contract was completed on February 1, 1922, and we so find. It is, therefore unnecessary to decide whether, as insisted for complainant, the defendant is estopped by the aforesaid action of its Official Board to claim that Munsell's contract was not complete on February 1, 1922.

Moreover, it is, in our opinion, not material to the result in this case whether Munsell's contract was complete on February 1, 1922, as insisted for complainant, or was not completed until the latter part of February, 1922, as contended by defendant. The date of the completion of Munsell's building contract was material to the issues below, for the reason that there was a controversy as to whether or not the Church had (after Munsell's assignment to the Bank) paid debts owing by Munsell which were not a lien on the Church building and which the Church was not under a legal obligation to pay. But it turned out that the Church paid more than $5000 of such claims for which Munsell had given, and his creditors had accepted, promissory notes maturing on or about April 1, 1922, which was beyond the statutory duration of the lien, even though the building was not completed until the latter part of February. The acceptance of such notes extinguished the lien. Bank v. Klyce, 127 Tenn., 669, 671, 156 S. W., 1083.

The things done by the parties, and by Munsell, after the completion of the church building, so far as they are material here, are, in the main, set forth in a stipulation signed by solicitors for the parties, respectively, and filed as a part of the record below, and which is as follows:

"For the purpose of abridging the record, and saving costs, the parties stipulate and agree that, as part of the facts in this cause, the following facts shall be treated as proven in the above entitled cause insofar as the same may be relevant, material and competent:

"1. That Union & Planters Bank & Trust Company, is and has been for many years, a corporation under the laws of the State of Tennessee, having its principal office in Memphis, Tennessee, and under charter powers, engaged in business as a bank and trust company; and that Linden Street Christian Church is, and has been for many years, a corporation for the general welfare, not private profit, under the laws of the State of Tennessee, maintaining a church for public worship on its property at the southeast corner or Linden avenue and Mulberry street in Memphis, Tennessee;

"2. That the exhibits attached to defendant's answer in this cause, and purporting to be a copy of a contract under date of November 12, 1921, between Linden Street Christian Church and one A. A. Munsell, including Specifications for Alterations and Additions to the Linden Avenue Christian Church Memphis, Tennessee, is a true copy of said contract exclusive of certain blue print plans, which

are wholly immaterial in the determination of the issues tendered in this cause;

"3.   That the aforementioned alterations and additions were fully completed prior to the filing of the original bill in this cause; and that the institution of this suit was delayed until after an earnest effort had been made by both parties to amicably settle the controversy, and until after conference with that end in view had been had;

"4.   That the statement of account between said Munsell and said Church as exhibited with defendant's answer in this cause is correct up to the point and date when the following payments were made by said Church;

"Shelby Electric Company ..................... $1,390.78
"J. H. Parrish ............................... 1,296.39
"Peter Burkhardt Cut Stone Co. .............. 1,746.65
"Cole Manufacturing Company .............. 2,498.80
"Wm. E. Barnes, Inc. ........................ 857.30
"Alfred R. Lewis ............................ 1,612.17
"Carter B. Lyon ............................ 1,329.85
"Broadway Coal and Ice Co. .................. 58.00
"Binswanger & Company ..................... 35.00

"That between May 10 and May 23, 1923 (1922), when payment of the aforesaid claims was made, said Church was withholding from the contract price due said Munsell upwards of $11,000, on account of the retained 15% of contract price of said Alterations and Additions; that the aforementioned claimants had just claims against said A. A. Munsell personally in the amounts set opposite their respective names as balances due them on account of labor and materials done or furnished on the Church building of said Linden Street Christian Church at the southeast corner of said Linden avenue and Mulberry street, required under said contract between said Church and A. A. Munsell; but that neither said Munsell nor complainant authorized said Church to pay said claims out of said retained funds of 15%; and that complainant did not acquiesce in such payment, but protested against the same;

"5.   That complainant demanded that said Church require said claimants to establish their claims as liens on said Church property, and earnestly requested defendant to file a bill of interpleader, tendering said retained 15% into court, so that the rights of the rival claimants might be adjudicated, and so that it might be determined whether the aforementioned claimants or creditors of said Munsell were entitled to liens to secure their said claims, but that said Church refused to take such action, and paid out said fund so as to leave thereof only a balance of nine hundred, twenty-three and 99/100 dollars ($923.99); and that complainant claimed and contended

· that said aforementioned claimant did not have valid lien claims on the property of said Church, and claimed that said Church had no right or authority to pay out said fund to said claimants as creditors of said Munsell;

"6.    That complainant on December 19, 1921, loaned to A. Munsell the sum of five thousand dollars · ($5000), first procuring from him a promissory note for said sum, due and payable ninety days after said date, signed and delivered by him and that complainant, as security for said loan accepted the assignment by Munsell on said Church, a true copy of which is set forth in the original bill in this cause and that said assignment was accepted by J. H. Wright, Chairman of the Building Committee, and purporting to act for said Linden Street Christian Church.

"7.    That said A. A. Munsell, was duly adjudicated a voluntary bankrupt with no assets during the summer of the year 1922."

We think the foregoing statement presents the determinative facts of the record. Upon these facts, is the Bank entitled to the recovery granted to it by the Chancellor? We think it is.          ·

"A valid assignment may be made   .   .   .   of money to become due in the future or on the performance of an existing contract." 5 Corpus Juris, p. 866; Johnson v. Donohue, 113 Tenn., 446, 83 S. W., 360; Smith v. Hubbard, 85 Tenn., 306, 2 S. W., 569.

And the assignee may bring suit in his name. Smith v. Hubbard, supra, p. 312.

"A building contractor has the common-law right to assign the balance due and to become due from the owner."   5 Corpus Juris, p. 867, Note 39(s).

"An order drawn on a debtor, payable out of a debt or fund in or coming into his hands, will operate as an assignment of either the whole or part of said debt or fund, depending on whether the order is for the whole or for a part thereof, if the order is accepted by the drawee.   .   .   .   The acceptance, however, of an order drawn on a part fund binds the drawee to make payment only to the amount of the fund due or to become due the drawer."   5 Corpus Juris, pp. 927-928.   See, also, Ahrens & Otto Mfg. Co. v. Moore & Sons, 131 Tenn., 191, 196, 174 S. W., 270; Montague v. Myers, 11 Heisk., 539.

"The general rule is that the unqualified assignment of a chose in action vests in the assignee the title thereto to the same extent as the assignor had it at the date of the assignment, and no more."   5 Corpus Juris, p. 958. ·

After the debtor has received notice of the assignment, he cannot acquire new · obligations of the assignor and off-set them to the prejudice of the assignee. 5 Corpus Juris, pp. 960-961.

"After the debtor has received notice of the assignment the chose becomes fixed in his hands and he cannot discharge the liability by

payment to any party other than the assignee, or in any way change the rights of the assignee as they stood at the time of the notice, except that he may avail himself of the set-off against the assignor, arising thereafter out of the same contract or transaction which gave rise to the debt assigned." 5 Corpus Juris, p. 935.

"The chose in the hands of the assignee is not subject to set-offs or counterclaims against the assignor in the hands of the debtor, if the obligation thus held by the debtor has not matured at the time of the notice, nor to set-off or counterclaim arising out of an independent contract, whether the contract was made before or after notice of the assignment." 5 Corpus Juris, pp. 963-965.

In the case of Taylor v. Deakins, 9 Lea, 520, 523, it is said: "It is true, the general rule is that the assignee of negotiable paper for a pre-existing debt, is not a holder in the due course of trade without notice, and hence with respect to existing equities he stands in the shoes of the assignor, but the assignee does not continue to stand simply in the shoes of the assignor, especially after notice, so that his right to enforce the payment of the debt may be defeated by the specific acts of the assignor or debtor."

The authority of J. H. Wright to bind the Church by his acceptance of notice of the assignment made by Munsell to the Bank seems clear on the record. It is admitted that Wright was the Chairman of the Building Committee, selected and appointed by the Church; that, on behalf of the Church, he executed the aforesaid written contract with Munsell; that, acting for the Church, he supervised the work done by Munsell under said Contract, approved and authorized all payments to Munsell, and accepted notice of liens filed by subcontractors and materialmen. In fact, the authority of Wright to accept notice of the assignment in question is admitted (and his acceptance thereof ratified) by defendant's answer, wherein, among other things, it is said:

"Upon information and belief, defendant admits that said J. H. Wright, purporting to act as Chairman of defendant's Building Committee, dated about December 19, 1921, covering $5000 of the fund, if the same should amount to so much, which might be rightfully and properly due said Munsell upon the final settlement of his accounts in connection with the aforementioned building contract. There had first been sent to said J. H. Wright the $5000 note of said Munsell, with a request that he bind defendant thereon as endorser. This request, of course, was declined. Following this, an assignment to the amount of $5000 was sent to said Wright, who declined to recognize the same. And at last there was presented to him an assignment intended to clearly set forth that payment on account thereof was only to be made when, if, and only to the extent that such payment might be rightfully, equitably and properly payable

to A. A. Munsell upon the complete fulfillment of his building contract, defendant reserving all of its rights in reference to the making or withholding of such payment. This assignment said J. H. Wright endorsed as Chairman of the Building Committee, thus accepting notice thereof. Defendant's officials knew nothing whatever about said assignment until long after the date thereof. But, as thus understood, and properly understood, defendant ratifies the action of said J. H. Wright in accepting notice of said assignment.''

The above quoted statements in defendant's answer did not constitute an admission of liability to complainant for the $5000 specified in the assignment, but we think that after these admissions in its answer that defendant could not question the authority of J. H. Wright to accept notice of the assignment. The legal effect of such acceptance depends upon the proper construction of the written assignment and the building contract mentioned therein.

''In the construction of assignments the main object is to ascertain the intention of the parties, as in the case of any other contract or deed.'' 5 Corpus Juris, p. 943.

It is clear, and is undisputed, that it was the intention of all the parties to the assignment that the $5000 named therein should be paid by the Church to the Bank out of the 15% of the contract price to be withheld by the Church, and which would be due Munsell if he complied with his contract; but the sum assigned was expressly ''payable at the time and in the manner and under the conditions'' provided by the contract between Munsell and the Church. This was an assignment of a particular fund, and acceptance bound the Church to pay same to the Bank only in the event a sufficient sum was due Munsell on final settlement between Munsell and the Church under the terms of their building contract. See authorities supra (5 C. J., pp. 927-928; 11 Heisk., 539; 131 Tenn., 191).

The ultimate question for determination in this case is whether the Church had the right to pay debts owing by Munsell to sub-contractors and furnishers of material, which debts were not liens on the church property, in preference to the payment of the sum assigned to the Bank. This depends on the proper construction of the building contract.

Speaking with reference to the construction of a building contract, the Supreme Judicial Court of Massachusetts said: ''The legal meaning of the contract, so far at least as respects the rights of third parties, is to be determined by its phraseology read in the light of the then existing statutes.'' Friedman v. County of Hampden, 204 Mass., 494, 501.

And in cases involving the application of our mechanics and furnishers lien laws to building contracts, our own Supreme Court has said: ''Every contract is presumed to be executed with reference

to existing laws." Green v. Williams, 92 Tenn., 220, 228, 21 S. W., 520. See, also, Reeves v. Henderson & Co., 90 Tenn., 521, 527, 18 S. W., 242.

In the instant case, the presumption that the contract was made with reference to the statutes relating to liens of mechanics and furnishers is reinforced by the provisions of the building contract, and of the bond executed by Munsell pursuant to said contract, which have been hereinbefore quoted.

"An agreement to pay the last installment on a contract upon satisfactory evidence that no liens or unsatisfied claims exist on the work applies only to claims under the mechanics lien law; and the condition is complied with if no liens are filed during the time allowed by law." 6 R. C. L., p. 866; Wallis Iron Works v. Monmouth Park Association (N. J.), 19 L. R. A., 456, 460.

There was no privity of contract between the Church and the sub-contractors who performed labor and furnished materials by contract with Munsell, and such sub-contractors and materialmen could not establish a personal liability against the Church for their claims. After notice of the assignment by Munsell to the Bank, the Church could not voluntarily assume new obligations of Munsell and offset them to the detriment of the Bank. See authorities, supra: 5 C. J., pp. 935 and 960-961; 9 Lea, 520.

In order to justify its refusal to honor Munsell's assignment to the Bank, the burden was on the Church to prove that the claims paid were valid debts of Munsell and secured by valid liens on the property of the Church. Bagaglio v. Paolina (R. I.), 44 L. R. A. (N. S.), 80; Wilson v. Nugent, 125 Calif., 280; Covell v. Washburn, 91 Calif., 560.

The defendant insists that its action in paying the bills of sub-contractors for materials and labor, in preference to the Bank's assignment, was justified by the last sentence of that part of the building contract hereinbefore quoted, under the title or heading of "LIEN LAW," which sentence is as follows: "Receipted bills for all materials and labor shall be furnished, if required by the architect or owners, before final settlement is made."

It does not appear that the Church or the architect exercised the privilege reserved by the provision just quoted, and demanded of Munsell "receipted bills for all materials and labor." The presence of this provision in the contract affords no protection to defendant in this case unless it operated to render the Church legally liable for all the debts incurred by Munsell for labor and materials used in the performance of his said contract with the Church, and we are quite well satisfied that it conveys no such meaning and was not so intended by the parties to the contract.

For the reasons stated, we are of the opinion that there is no error in the Chancellor's decree, and the defendant's assignments of error are overruled.

The ·Chancellor allowed interest on the amount of the Bank's assignment ($5000) from the date of the filing of complainant's bill. It is said in complainant's brief that complainant is entitled to interest from April 1, 1922, the date on which the settlement should have been made under the terms of Munsell's contract with the Church, and that the decree should be corrected accordingly. Complainant·did not appeal, but defendant prayed and was granted a broad appeal from the decree of the chancery court. A broad appeal in chancery opens up the case for the reexamination of the whole matter of law and fact appearing in the record. Shannon's Code, sec. 4887. But if, in such case, the appellee desires to obtain a correction of an error against him, it is his duty to file an assignment pointing out such error. Taylor v. Elgin, 140 Tenn., 602, 610, 617, 622, 205 S. W., 428. Complainant has filed no assignment of error in this case.

It results that the decree of the chancery court is affirmed, and a decree will be entered here accordingly. The costs of the appeal will be adjudged against the appellant Linden Street Christian Church and the sureties on its appeal bond.

Owen and Senter, JJ., concur.