MoEjNNEy, J.,
delivered the opinion of the court.
This was a bill of interpleader. The case as presented by the pleadings and proof, is briefly this. On the second day of June, 1852, one Gilman recovered a judgment in the circuit court of Davidson, against the complainant for the sum of $467 68. Instantly, upon the verdict being announced,- and perhaps before the jury had retired from the box, Gilman, by a writing-under seal, assigned and transferred the said recovery and judgment to the defendant Langley, for the indemnity of himself and one Smiley, as the endorsers of Gilman on a note for $500, which liability was incurred upon the faith of an assurance that such an assignment would be *338 made when judgment was recovered. This assignment was spread upon tbe minutes of tbe court, but no notice of tbe assignment was given to tbe judgment debtor.
On tbe same day, and very shortly after tbe foregoing assignment was made, tbe defendant Oox, as administrator of one Tooney, with, tbe view of obtaining satisfaction of judgments recovered against Gilman, before a justice of tbe peace of Davidson, on tbe seventh of February, 1852, one for $201 43,. and tbe other for $202 23, caused a garnishment to be served upon tbe complainant, summoning Mm to appear before tbe justice on tbe same day, at tbe hour of 2 o’clock. In obedience to this process, Olodfelter, tbe complainant, appeared 'before said justice, who rendered judgment against him as garnishee, for the amount of said two judgments with interest and costs. These judgments against tbe garnishee were stayed by him for the period of eight months. Before tbe expiration of tbe stay of execution upon tbe justice’s judgments against tbe complainant as garnishee, an execution issued against him upon tbe circuit court judgment, for tbe full amount thereof, which was levied upon bis property, and thereupon, be brought this bill of interpleader, offering to pay tbe money into court, . and praying the court for bis safety,'to decree to which of said parties tbe same properly belonged. Tbo chancellor held that tbe right of Langley was not perfected, on tbe ground of want of notice of .the assignment to tbe debtor, and decreed that tbe money should be applied to the satisfaction of the justice’s judgments on the garnishment.
1. If there were no other question in tbe case than that upon which the chancellor based his decree, wo *339 should hold that his conclusion was correct. There is 'an irreconcilable conflict of authority upon this subject. The weight of American authority seems to be, that the assignment of a chose m action is complete in itself, and vests a perfect title in the assignee, as against third per-sons, without notice of the assignment to the debtor. But the contrary of this, is 'the settled doctrine of the English, as well as of some of the courts of this country,at the present day. The latter we consider as the more reasonable and safe practical rule, and have accordingly held, on more than one occasion, that the assignment of a chose m action is not complete, so as to vest the title absolutely in the assignee, until notice of the assignment to the debtor; and this not only as regards the debtor, but likewise as to third persons. And, therefore, as "between successive purchasers or assignees of a chose in action, he is entitled to preference who first gives notice to the debtor, although his assignment be subsequent to that of the other. To perfect the assignment not merely as against the debtor, but also as against creditors and subsequent Iona fide purchasers, notice must be given. Hence it follows, that an attachment by a creditor, in the period intervening between the assignment and the notice, will have preference.
This doctrine furnishes a definite rule for determining between opposing equities; and places the rights of the assignee of a chose in action upon a footing of security altogether unattainable under the opposite rule. See the cases English and American. White & Tudor’s Leading Cases, vol. 2. part 2, 209 to 240.
2. But another question is presented. Can the proceedings by garnishment be maintained in a case like *340 the present? "We are aware of no decision upon this question; but it seems to us that upon no sound exposition of our statutory proceedings upon this subject, can the remedy by garnishment be held applicable to a case like the present.
It is true, that neither in the act of 1815, nor in any other of the statutes relating to this mode of proceeding, .is there any distinction made as to the character of the debts liable to be reached by garnishment. But there would be a palpable incongruity in giving such a construction to these statutory regulations, as would subject a debtor, whose liability has been already ascertained and fixed by the judgment of a court of record, to a second judgment for the same indebtedness, before a tribunal so constituted as, (all other objections aside) to possess no power by injunction, or in any other mode, of protecting such debtor from his existing liability upon the previous judgment in court, and thus leaving him exposed to executions upon both judgments. The act of 1843, ch. 65, provides a remedy against this mischief, so far as relates to judgments rendered before a justice of the peace, but it goes no further. It cannot well be supposed, that the Legislature intended that the solemn judgments of courts of record should be embraced in this proceeding by garnishment before justices of the peace, and we are not inclined to go in advance of legislation, in extending their jurisdiction in any case.
In cases like the present, the jurisdiction of a court of equity is equally ample and well established; there is the less reason, therefore, for a forced construction of our garnishment laws, in order to support the jurisdiction of justices in such cases. To this length we are not *341 at present prepared to go. The force of this reasoning is not lessened, because the garnishee debtor may be protected by a bill in equity, or supersedeas in the court of law; it is unjust to Mm, to subject Mm to the necessity of this expense and trouble, when the mischief can be altogether avoided by the usual mode of proceeding in the proper forum.
In this view the decree is erroneous, and will be reversed.